Eric SKANSGAARD, Plaintiff,

v.

BANK OF AMERICA, N.A., and BAC
Home Loans Servicing, L.P.,
Defendants.

Case No. C11–988 RJB.

United States District Court,
W.D. Washington,
at Tacoma.

Oct. 13, 2011.

Brett Cebulash, Kevin S. Landau, Taus, Cebulash & Landau, LLP, New York, NY, E. Michelle Drake, Sarah W. Steenhoek, Kai H. Richter, Nichols Kaster, PLLP, Minneapolis, MN, Patrick F. Madden, Shanon J. Carson, Berger & Montague, Philadelphia, PA, Adam M. Stewart, Edward F. Haber, Shapiro Haber & Urmy LLP, Boston, MA, Beth E. Terrell, Michael Duane Daudt, Terrell, Marshall, Daudt & Willie, PLLC, Seattle, WA, Timothy S. DeJong, Stoll, Stoll, Berne, Lokting & Shlacheter, PC, Portland, OR, for Plaintiff.

Brian M. LaMacchia, David L. Permut, John C. Englander, Matthew G. Linden-

baum, Goodwin Procter, Boston, MA, Jacob M. Downs, John S. Devlin, III, Lane Powell PC, Seattle, WA, for Defendants.

## ORDER DENYING MOTION TO DISMISS

ROBERT J. BRYAN, District Judge.

This matter comes before the Court on Defendants' motion to dismiss. (Dkt. 7.) The Court has considered the motion, the response the reply, and all related papers. The Court finds this matter suitable for decision without oral argument.

## INTRODUCTION AND BACKGROUND

Plaintiff Eric Skansgaard is an owner of a home located in Hoquiam, Washington. Complaint ¶ 13. In October 2002, Skansgaard obtained a Federal Housing Administration loan from Eagle Home Mortgage (Eagle) in the amount of $83,686, to purchase the home. *Id.* Because the property is located in a Special Flood Hazard Area (SFHA) as designated by the Federal Emergency Management Agency (FEMA), Skansgaard is required by federal law and the terms of his deed of trust to maintain flood insurance on the property. *Id.;* Dkt. 8–1 at 4.

For the initial period of the loan, Skansgaard maintained only enough flood insurance to cover the principal balance of the loan, not the replacement value of the land and improvements. Compl. ¶ 17. Eagle never objected to the coverage amount. *Id.* ¶¶ 16–17.) Bank of America purchased Skansgaard's loan, and the mortgage is now serviced by a division of Bank of America, BAC Home Loans Servicing, LP (Defendant or BHLS). *Id.* ¶ 13. BHLS has informed Skansgaard that his flood insurance coverage is not adequate, and that he must have flood insurance equal to the replacement value of the improvements to the property or $250,000, which-

ever is the lower amount. *Id.* ¶ 18.) Bank of America allegedly force-placed flood insurance on Plaintiff's property and charged $799.22 to Plaintiff's escrow account. *Id.* ¶ 20.) Bank of America is alleged to have received a commission for this acquisition of flood insurance. *Id.* ¶ 23.) Plaintiff alleges that Defendants' force placement of insurance has created an escrow shortage and his mortgage payment has "skyrocketed from $758.46 per month to well over $900 per month." *Id.* ¶ 21.)

In May 2011, Skansgaard filed a complaint in King County Superior Court, claiming that defendants "unfairly, deceptively, and unlawfully required" him to purchase and maintain flood insurance on his property in amounts greater than required by law. Skansgaard also alleges that Defendants have unfairly and unlawfully profited by force-placing flood insurance on his property. On behalf of an alleged class of similarly situated individuals, Skansgaard pursues three claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and, (3) a violation of the Washington Consumer Protection Act ("CPA"). Compl. ¶¶ 35–59. Skansgaard also seeks a declaration that Defendants cannot require flood insurance in the amount requested and that Defendants breached the contract and violated Washington law by force-placing flood insurance beyond the required level. *Id.* ¶¶ 60–64. On June 13, 2011, Defendants removed the case to this Court from King County Superior Court. Dkt. 1–2 at 3. Defendants have moved to dismiss the complaint. Dkt. 7.

## MOTION TO DISMISS STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

## BREACH OF CONTRACT CLAIM

■■■ Contract interpretation is generally a question of law for the Court. *See Berg v. Hudesman,* 115 Wash.2d 657, 663, 801 P.2d 222 (1990). Under Washington law, Courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times Co.,* 154 Wash.2d 493, 504, 115 P.3d 262 (2005). If the language of a contract is clear and unambiguous, the Court must "enforce the contract as written; it may not modify the contract or create ambiguity where none exists." *Lehrer v. State Dep't of Social & Health Servs.,* 101 Wash. App. 509, 515, 5 P.3d 722 (2000). "Where the parties' contractual language is ambiguous, the principal goal of construction is to search out the parties' intent." *Jones Assocs., Inc. v. Eastside Props., Inc.,* 41 Wash.App. 462, 467, 704 P.2d 681 (1985). "Language is ambiguous if, on its face, it is fairly susceptible to more than one reasonable interpretation." *Mendoza v. Rivera–Chavez,* 88 Wash.App. 261, 268, 945 P.2d 232 (1997) (quotation and citation omitted). "[A]mbiguous contract language is strictly construed against the drafter." *Jones Assocs.,* 41 Wash.App. at 468, 704 P.2d 681.

■■■ The parties dispute whether the deed of trust unambiguously permits Defendants to require flood insurance in any amount it desires. The deed of trust states:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.

Dkt. 8–1 at 4. The Secretary refers to the Secretary of HUD. HUD regulations require flood insurance "in an amount at least equal to either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of the NFIP [National Flood Insurance Program] insurance available with respect to the property improvements, whichever is less." 24 C.F.R. § 203.16a(c). This is lower than the amount of insurance Defendants require of Plaintiff—the value of the improvements to the land.

The three sentences of the deed of trust are ambiguous as to whether the lender has discretion to require any amount of flood insurance it desires. The sentences can be construed in two ways. Defendants urge the Court to read them to mean that any hazard insurance includes flood insurance, and that the lender has the right to require such insurance to be kept in any amount it sees fit. This is not the only reasonable reading possible. Plaintiff argues that the third sentence acts independently of the first two sentences. Plaintiff reads the contract to mean that the lender may only require the flood insurance be

kept in accord with the levels set by the Secretary, not the full replacement value of the land and any improvements.

Construing the language of the deed of trust in Plaintiff's favor and giving full meaning to all relevant provisions, Plaintiff has stated a claim for breach of contract. As pleaded, the complaint adequately alleges that Defendants breached the terms of the deed of trust by requiring insurance over the agreed levels. Accepting Plaintiff's allegations as true, the deed of trust did not permit Defendants to set the flood insurance at any other level. Plaintiff has adequately alleged a breach of contract claim and the motion should be denied as to this claim.

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Defendants argue primarily that the breach of covenant of good faith and fair dealing claim must be denied because they have not required flood insurance beyond the terms of the deed of trust. This argument is in issue, and should be rejected as a basis to dismiss Plaintiff's breach of covenant claim.

Defendants also argue that the claim should be dismissed because Plaintiff has not demonstrated that he was denied the "full benefit of performance" or that Defendants "interfere[d] with [Plaintiff's] performance." Dkt. 7 at 14.

■ The "implied duty of good faith and fair dealing" in every contract "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569, 807 P.2d 356 (1991). "Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised

in good faith-a requirement that includes the duty to exercise the discretion reasonably." *Craig v. Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (applying Washington law) (quotation omitted). "Good faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir.2001) (applying Washington law).

Plaintiff has sufficiently alleged a claim for breach of the covenant of good faith and fair dealing. Plaintiff alleges Defendants unilaterally decided to require more insurance than was required by the deed of trust. This act allegedly deprived Plaintiff of the full benefit of his bargain. Defendants argue that they only required the amount of insurance FEMA recommends. Whether Defendants action was reasonable is a question of fact that cannot be determined on the motion to dismiss, and does not provide a basis to dismiss the claim as a matter of law. The motion to dismiss this claim should be denied.

## CONSUMER PROTECTION ACT

■ Defendants argue Plaintiff's CPA claim fails because he has not alleged any unfair or deceptive acts that have a capacity to deceive the public, as required by the statute.

■ To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 74, 170 P.3d 10 (2007). "An unfair or deceptive act or practice need not be intended to

deceive-it need only have 'the capacity to deceive a substantial portion of the public.'" *Id.* at 74–75, 170 P.3d 10 (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785, 719 P.2d 531 (1986)).

Plaintiff's CPA claim turns on the allegation that Defendants forced Plaintiff to obtain insurance in an amount Plaintiff was not contractually obligated to provide. Plaintiff also alleges Defendants received monetary kick-backs from this action. These allegations suggest Defendants acted deceptively to impose an obligation that was not legally required and from which they benefitted financially. This conduct is sufficiently alleged to have the capacity to deceive a substantial portion of the public. The motion to dismiss Plaintiff's CPA claim should be denied.

## CONCLUSION

Therefore, it is hereby **ORDERED:**

Defendants' Motion to Dismiss (Dkt. 7) is **DENIED.** Plaintiff's claims may proceed.

Defendants' Motion to Stay Discovery (Dkt. 25) is **DENIED** as **MOOT.**