# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NORTHWOOD ESTATE, LLC, a Washington State limited liability company,<br><br>           Respondent,<br><br>    v.<br><br>LENNAR NORTHWEST, INC., a Delaware corporation,<br><br>           Appellant. | No. 52000-1-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Northwood Estate LLC contracted to sell 33 residential lots to Lennar Northwest, Inc. In relevant part, an amendment to their agreement provided that if Northwood successfully recorded an approved plat modification by a specified deadline, the number of lots would increase by five and Lennar would pay Northwood an additional $765,000. When the deadline passed without successful approval and recording, Lennar assumed control of the modification application and refused to pay Northwood the additional $765,000. Northwood sued Lennar for breach of contract and included alternative claims of quantum meruit and unjust enrichment.

Lennar argued the relevant provision was an unsatisfied condition precedent excusing Lennar from payment. The trial court ultimately agreed with Northwood that the plat modification provision was instead a contractual obligation, and so Lennar was not excused from payment, but it could seek damages for Northwood's delay. The court granted summary judgment to Northwood

on its breach of contract claim and granted summary judgment to Lennar rejecting the quantum meruit and unjust enrichment claims.

Lennar obtained discretionary review of the breach of contract decision. Northwood counters that the trial court was correct to rule in its favor because treating the provision as a condition precedent would result in forfeiture, and forfeitures are disfavored. In the alternative, Northwood argues that if the provision was a condition precedent, we should employ equitable remedies to prevent the forfeiture of $765,000 that would result from enforcement of the condition. In that event, Northwood asks that we reinstate its equitable claims.

We reverse the trial court's conclusion that the plat modification provision was a contractual promise and its grant of summary judgment to Northwood on this basis. We hold that the relevant provision created a condition precedent and recognize that conditions precedent should not be strictly enforced if they effectuate a harsh forfeiture. We remand to the trial court to determine whether any equitable relief is appropriate to prevent forfeiture in this case and, if so, what form that relief should take.

FACTS

In December 2015, Northwood entered into a purchase and sale agreement to sell 33 residential lots in the city of Edgewood, Washington to Lennar for $153,000 per lot. Paragraph 2.3 of the agreement provided that Northwood would obtain, at its expense, a plat modification to convert 8 of the lots into 13 separate lots, increasing the total number of lots by 5. If the plat modification was recorded within a year after closing, Lennar would pay Northwood an additional $765,000. If Northwood could not meet that deadline, it could extend the plat modification deadline once for up to three months.

Paragraph 2.3 also provided that if Northwood could not obtain finished lots prior to closing, then it would be in default. Paragraph 7.1 defined "default" as the "failure of either party to perform any act to be performed by such party" if the failure continued for 10 days after written notice by the nondefaulting party. Clerk's Papers (CP) at 29. Paragraph 10.14 also provided, "Time is of the essence with respect to the performance by Buyer and Seller of each and every obligation under each and every provision of this Agreement." CP at 33.

On December 6, 2016, the parties amended the agreement's plat modification provision, changing the modification deadline to December 1, 2017, and removing Northwood's right to extend the deadline any further. The second amendment reaffirmed, "If the Plat Modification has recorded not later than the Plat Modification Deadline, the number of Lots will increase by five (5) and Buyer shall pay Seller an additional Seven Hundred Sixty Five Thousand and No/100 Dollars ($765,000)." CP at 38. It then continued, "If Seller does not obtain the Plat Modification by the Plat Modification Deadline, Seller shall assign and turn over to Buyer Seller's applicant status to the Plat Modification and all other entitlements, development rights, and permits related thereto." CP at 38.

Closing occurred on December 8, 2016, and Northwood had almost a year to fulfill its remaining obligation to obtain approval for and record the plat modification by the new deadline of December 1, 2017.

On November 13, 2017, Northwood submitted the plat modification application to the city of Edgewood. The city then informed Northwood that the city council would not review the application until January 9, 2018 due to holiday schedules. On December 4, 2017 Lennar informed Northwood that it would not pay the $765,000 and that it would take over as the applicant with all

related entitlements, development rights, and permits, as outlined in the second amendment. Northwood did not receive a 10-day notice of default and opportunity to cure, as is provided for in the agreement where one party is in default. On December 13, 2017, Lennar received a notice of incomplete application. The notice requested that Lennar correct and resubmit the final plat drawing by removing buffer setback lines. The notice also requested that Lennar submit a corrected application with the signatures of parties authorized to act on its behalf. On January 9, 2018, Lennar submitted a revised application. The city deemed the application complete on January 10, 2018, granted the application, and recorded it on January 25, 2018.

Lennar refused to pay Northwood for the additional five lots because Northwood had not complied with the deadline established in the second amendment. Northwood sued Lennar for breach of contract. It alternatively sought recovery under quantum meruit and unjust enrichment. In a declaration, Northwood's managing member stated that Northwood had spent approximately $260,000 and 750 hours on modifying the plat and preparing the application. This included, for example, engineering, surveying, excavation, and the reworking of driveway approaches, curbing, and gutters. He further stated that he had not intended to assume the risk of the modification not being recorded in time, and that he was no longer in control of the application once it was submitted to city officials, who informed him after submission that recording may be delayed by its holiday schedule.

Both parties moved for summary judgment. Lennar argued that the amended plat modification provision established a condition precedent—that Northwood would obtain the modification by the deadline—and so once Northwood failed to meet that condition, Lennar was excused from payment. Northwood countered that the provision should instead be read as a

contractual promise in order to avoid a forfeiture, such that Northwood's failure to meet the deadline constituted a minor breach but did not excuse Lennar from paying the $765,000. In the alternative, Northwood argued that if the provision was a condition precedent, Northwood was entitled to recovery under unjust enrichment or quantum meruit.

The trial court initially concluded there was a condition precedent, but indicated that unjust enrichment or quantum meruit may be available to avoid enforcement because enforcement would result in a forfeiture. The court dismissed the breach of contract claim but concluded that issues of fact existed with respect to Northwood's claims for unjust enrichment and quantum meruit. The parties would therefore proceed to trial on those claims.

Both parties moved for reconsideration. Lennar argued that the trial court should have dismissed Northwood's unjust enrichment and quantum meruit claims, while Northwood argued the court should have interpreted the plat modification provision as a contractual promise. On reconsideration, the trial court agreed with Northwood that the provision was not, in fact, a condition precedent. The court also granted Lennar's motion to dismiss Northwood's quantum meruit and unjust enrichment claims. The court determined that the only remaining issue for trial would be the amount of offset damages to Lennar caused by Northwood's delay, even though Lennar had not filed a counterclaim for damages.

Lennar sought discretionary review on the condition precedent issue, which we granted.

## ANALYSIS

### I. INTERPRETATION OF THE PLAT MODIFICATION PROVISION

A.      Standard of Review

In reviewing a grant of summary judgment, we apply the same standard as the trial court. Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *DeVeny v. Hadaller*, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007) (quoting CR 56(c)). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864, 324 P.3d 763 (2014). "'We review the trial court's conclusions of law de novo.'" *DeVeny*, 139 Wn. App. at 616 (quoting *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002)).

"The moving party bears the burden of first showing that there is no genuine issue of material fact." *State v. Grocery Mfrs. Ass'n*, 5 Wn. App. 2d 169, 185, 425 P.3d 927 (2018), *review granted*, 193 Wn.2d 1001 (2019). Where reasonable minds could reach only one conclusion from the admissible facts in evidence, that issue may be determined on summary judgment. *Sutton*, 180 Wn. App. at 864-65.

"When interpreting a contract, our primary objective is to discern the parties' intent." *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493, 116 P.3d 409 (2005). Contract interpretation is a question of law reviewed de novo where, as here, the "'interpretation does not depend on the use of extrinsic evidence.'" *Kelley v. Tonda*, 198 Wn. App. 303, 312-13, 393 P.3d 824 (2017) (quoting *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 129 Wn.

App. 303, 311, 119 P.3d 854 (2005)).  Summary judgment therefore is appropriate where the only dispute is over the interpretation of particular contract language, without reliance on extrinsic evidence.  *Id.* at 313.  The parties here do not dispute any material facts, but rather dispute the proper interpretation of the plat modification provision based on the contract language.

B.    The Plat Modification Provision Is a Condition Precedent

Lennar argues that the trial court erred in interpreting the plat modification provision as a contractual promise,[1] rather than as a condition precedent.  We agree that the provision creates a condition precedent.

A condition precedent is an event that must occur before there is a right to immediate performance of a contract.  *Tacoma Northpark, LLC v. NW, LLC*, 123 Wn. App. 73, 79, 96 P.3d 454 (2004).  If the condition does not occur, the parties are excused from performance.  *Id.*  In contrast, the breach of a contractual promise subjects the promisor to liability for damages, but it does not necessarily discharge the other party's duty of performance.  *Id.*

Therefore, if the second amendment is a condition precedent, then Lennar was not obligated under the contract to pay Northwood the additional $765,000 for the five additional lots once Northwood failed to record the plat modification at the deadline.  However, if the second amendment is a promise, then Lennar may be entitled to damages from Northwood, but still must pay Northwood for the additional lots.

Whether a contract provision is a condition precedent or a contractual promise depends on the intent of the parties, to be determined from a fair and reasonable construction of the language

---

[1] The parties use the term "covenant," whereas the case law uses the term "contractual obligation" or "contractual promise."  There being no meaningful distinction, we adopt the language used in the case law.

used in light of all the surrounding circumstances. *Lokan & Assocs., Inc. v. Am. Beef Processing, LLC*, 177 Wn. App. 490, 499, 311 P.3d 1285 (2013). "[W]ords such as 'provided that,' 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after' suggest a conditional intent, not a promise." *Tacoma Northpark*, 123 Wn. App. at 80 (quoting *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 467, 704 P.2d 681 (1985)). The terms "subject to" and "contingent upon" likewise demonstrate an intent to form a condition precedent. *Id.* And the *Jones Associates* court noted that a provision using the term "if" created an express condition precedent in that case. 41 Wn. App. at 467-68 & n.4.

Where it is doubtful whether words create a contractual promise or an express condition precedent, we will interpret them as creating a promise. *Tacoma Northpark*, 123 Wn. App. at 80. This is because forfeitures are disfavored, so when resolving doubts as to whether a condition precedent exists, "'an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.'" *Jones Assocs.*, 41 Wn. App. at 469 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 227(1) (1981)). On the other hand, "if the term that requires the occurrence of the event as a condition is expressed in unmistakable language, the possibility of forfeiture will not affect the interpretation of that language." RESTATEMENT, *supra*, § 229 cmt. a.

We conclude that the second amendment created a clear condition precedent. The amendment provided, "*If* the Plat Modification has recorded not later than the Plat Modification Deadline, the number of Lots will increase by five (5) and Buyer shall pay Seller an additional Seven Hundred Sixty Five Thousand and No/100 Dollars ($765,000)." CP at 38 (emphasis added). "If Seller does not obtain the Plat Modification by the Plat Modification Deadline, Seller shall

assign and turn over to Buyer Seller's applicant status to the Plat Modification and all other entitlements, development rights, and permits related thereto." CP at 38.

The use of the term "if" makes clear that Lennar's payment to Northwood of $765,000 is conditioned on Northwood obtaining the plat modification by the specified deadline. Under the second amendment, Northwood assumed the risk of not getting the modification recorded before the deadline. The parties agreed to an extension of the modification deadline and removed Northwood's ability to extend it any further. Although Northwood did not have any direct control over how long it would take for city officials to approve the application after submission, it had full control over the submission and yet did not submit the application until only two weeks before the deadline. Furthermore, the city required a change to the application that Northwood had submitted before the city could process it.

Northwood argues that the parties' agreement did not create a condition precedent because it would enable Lennar to "walk[] away with everything." Br. of Resp't at 11-12. Northwood cites to *Thatcher v. Salvo*, 128 Wn. App. 579, 585-87, 116 P.3d 1019 (2005), where the court found an unfulfilled condition precedent, and as a result, the buyer kept their money while the seller kept their property. Northwood contends this case is different because Lennar received five additional lots, while Northwood had to forgo the promised $765,000, and it spent $260,000 on the plat modifications. Thus, Lennar received a windfall that was absent in *Thatcher*.

But in *Thatcher*, there was no dispute that the contract contained a condition precedent. 128 Wn. App. at 585-87. Both parties were returned to their original position, but that was a *consequence* of the unfulfilled condition precedent and not a *prerequisite* for finding a condition precedent in the first place, as Northwood appears to argue. *Id.* The fact that Lennar ended up

with a windfall in this case may implicate equitable remedies, but it does not bear on whether the provision was a condition precedent in the first place where it is clear from the contract language that one party's performance is conditioned on some other act occurring first.

Northwood also argues that we should apply the principles articulated in *Jones Associates* that both conditions precedent and forfeitures are disfavored. 41 Wn. App. at 469-70. Forfeitures are disfavored, and where there is some doubt as to whether a condition exists, we prefer interpretations that do not result in a forfeiture. *Id*. at 469. But the *Jones Associates* court rested its decision on the fact that the express language of the provision did not contain any words clearly creating a condition precedent. *Id*. at 467. It was therefore "unclear whether the parties intended obtaining King County approval to be a condition precedent to payment under the contract." *Id*. In contrast, in this case, it is clear that the express language of the plat modification proviso created a condition precedent: *if* the plat modification was recorded by the deadline, *then* the number of lots would increase and Lennar would pay Northwood an additional $765,000.

Northwood next argues that the second amendment did not create a condition precedent because it must be read in context with the rest of the contract, which contained default provisions addressing remedies when a party failed to perform. Paragraph 2.3 of the original agreement separately provided that if Northwood could not obtain the required finished lots prior to closing, it would be in default. In addition, paragraph 7.1 defined "default" as the "failure of either party to perform any act to be performed by such party" if the failure continued for 10 days after written notice by the nondefaulting party. CP at 29. Northwood argues that in the context of these provisions, the plat modification provision in the second amendment should be read as a contractual promise because the plat modification was an act to be performed by Northwood.

According to Northwood, its failure to meet the December 1, 2017 deadline should have been interpreted as a failure to perform under paragraph 7.1 of the agreement, and Lennar should have notified Northwood and given it 10 days to cure the failure before nonperformance could be deemed a default.

This argument ignores the fact that closing had already occurred, and the provision addressing failure to obtain finished lots before closing specifically invoked the default paragraph 7.1. In contrast, the provision at issue here regarding plat modification postclosing does not refer to the default provision. If the parties had intended for the plat modification to be encompassed by paragraph 7.1, they could have explicitly stated as much, as they did with respect to the requirement that Northwood obtain finished lots before closing. Instead, they used language that signaled that obtaining a plat modification was a condition precedent to Lennar paying Northwood the additional $765,000, as well as language that described what would happen in the event that Northwood could not obtain the modification.

In sum, we hold that, based on the plain language of the second amendment, the parties intended for the plat modification provision to create a condition precedent. We next consider whether Northwood's failure to meet the condition should nevertheless be excused to avoid forfeiture.

C.      Northwood May Be Entitled to Equitable Remedies to Prevent a Forfeiture

Northwood argues in the alternative that, even if the plat modification provision is a condition precedent, it should nevertheless not be strictly enforced in order to avoid a forfeiture. We agree that equitable remedies may be appropriate and remand for the trial court to make this determination.

11

1. Equitable grace period to avoid forfeiture

"'[E]quity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable.'" *Proctor v. Huntington*, 169 Wn.2d 491, 500, 238 P.3d 1117 (2010) (alteration in original) (quoting *Arnold v. Melani*, 75 Wn.2d 143, 152, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968)). Forfeitures are not favored in law and to avoid their harshness, courts have granted equitable remedies to avoid the hardship that often results from strict enforcement. *Pardee v. Jolly*, 163 Wn.2d 558, 574, 182 P.3d 967 (2008). Conditions precedent "will be excused if enforcement would involve extreme forfeiture or penalty and if the condition does not form an essential part of the bargain." *Ashburn v. Safeco Ins. Co. of Am.*, 42 Wn. App. 692, 698, 713 P.2d 742 (1986); *see also Kilcullen v. Calbom & Schwab, PSC*, 177 Wn. App. 195, 204-05, 312 P.3d 60 (2013) ("A trial court has the authority to excuse a condition to performance . . . where enforcing the condition would cause disproportionate forfeiture."); RESTATEMENT, *supra*, § 229. "'To justify a forfeiture for the violation of the condition, the violation must be wilful and substantial.'" *Port of Walla Walla v. Sun-Glo Producers, Inc.*, 8 Wn. App. 51, 59, 504 P.2d 324 (1972) (quoting *In re Estate of Murphy*, 191 Wash. 180, 188, 71 P.2d 6 (1937), *rev'd on other grounds*, 193 Wash. 400, 75 P.2d 916 (1938)).

For example, where strict enforcement of a forfeiture would result in hardship and "'do violence to the principle of substantial justice between the parties'" under the facts of a case, courts may excuse performance of a condition by extending a grace period for the party violating the condition to complete their performance. *Ryker v. Stidham*, 17 Wn. App. 83, 89, 561 P.2d 1103 (1977) (quoting *Dill v. Zielke*, 26 Wn.2d 246, 252, 173 P.2d 977 (1946)); *see Rains v. Lewis*, 20 Wn. App. 117, 122, 579 P.2d 980 (1978). In other words, the court may "'rewrite'" the contract

to provide a reasonable amount of time for the offending party to complete performance before allowing forfeiture and to set terms whereby the contract can be reinstated. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 405, 814 P.2d 255 (1991). Whether a grace period is warranted depends on the equities in each particular case. *Pardee*, 163 Wn.2d at 574. In determining whether an equitable grace period is appropriate, courts have considered nonexclusive factors such as the amount that would be forfeited without the equitable relief sought, whether the failure to meet the deadline was inadvertent, and whether the other party was prejudiced by the delay. *Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 218-20, 242 P.3d 1 (2010).

In *Pardee*, our Supreme Court remanded to the trial court to consider, in light of the "significant forfeiture" at issue, whether the facts and circumstances of that case demanded that an equitable grace period be extended. 163 Wn.2d at 576. That case involved the termination of an option to purchase after Pardee failed to timely notify the property owner that he was exercising the option. *Id.* at 572. But because Pardee had expended over $20,000 and 2,500 hours of work improving the property, the court concluded that he may have been entitled to a grace period to avoid the forfeiture. *Id.* at 576.

*Pardee* followed the reasoning of two Court of Appeals cases, *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601, 605 P.2d 334 (1979), and *Heckman Motors, Inc. v. Gunn*, 73 Wn. App. 84, 867 P.2d 683 (1994). In *Wharf Restaurant*, a long term lessee failed to timely exercise an option to renew its lease, although it had made substantial improvements to the property and intended to renew. 24 Wn. App. at 603. The court considered the equities of the case, noting equity's abhorrence of forfeitures, and concluded that a grace period should be extended to enable the lessee to renew the option. *Id.* at 611-12. In doing so, the court considered

the following factors: (1) whether the failure to exercise the option was inadvertent rather than intentional, culpable, or grossly negligent; (2) whether the lessee made valuable permanent improvements; (3) whether the lessor was prejudiced by the untimely notice; (4) the length of the lease; and (5) whether the lessor contributed to the delay. *Id.* at 612-13.

In *Heckman Motors*, in contrast, we held that the lessee failing to renew an option was not entitled to a grace period because it had not made substantial improvements to the property, there was a substantial delay in exercising the option, and the lessor had done nothing to contribute to the delay. 73 Wn. App. at 88-89. We noted that whether an equitable grace period is appropriate is largely within the trial court's discretion, and the trial court there determined that equity did not demand an exception to excuse the untimely exercise of the option. *Id.* at 88.

Here, the plat modification deadline arguably may have been essential to the contract because the plat modification was the only remaining task under the contract and the parties' time-is-of-the-essence provision suggests that a condition involving the modification deadline was important. However, apart from the boilerplate time-is-of-the-essence provision, Lennar does not point to anything in the record showing that timeliness was an essential part of the bargain or that Lennar suffered substantial harm or prejudice as a result of the delay. Nor is there any evidence that Northwood's failure to record the modification in time was willful, intentional, or even grossly negligent. Finally, without a grace period or other equitable relief, the forfeiture would be extreme: the inability to recover the $260,000 expended, the additional 750 hours of work expended, other forgone opportunities, and the lost anticipated profits that Northwood would have received as a result of the $765,000 payment. In contrast, Lennar essentially received five extra lots at no apparent significant additional expense.

In part because it incorrectly concluded that the second amendment did not contain a condition precedent, the trial court did not expressly consider an equitable grace period or other equitable relief in the face of Northwood's failure to satisfy a condition precedent. Because providing an equitable remedy is within the trial court's discretion and because the trial court in this case has not yet made this determination, we remand for the trial court to determine whether equitable relief is appropriate and, if so, what form it should take. *See Pardee*, 163 Wn.2d at 576. Such relief may include extension of an equitable grace period to Northwood to complete its performance of the condition, reduction of the $765,000 contract price based on the costs or other harm incurred by Lennar as a result of the delay, payment of costs to Northwood for its time and effort spent preparing the plat modification application, or some combination of these or other possible remedies.[2] *See Emerick v. Cardiac Study Ctr., Inc.*, 189 Wn. App. 711, 730, 357 P.3d 696 (2015) ("[A] trial court has broad discretionary authority to fashion equitable remedies."). A party does not need to plead damages for the trial court to consider all types of remedies in equity, including, for example, reducing the $765,000 by an amount that Lennar was harmed by Northwood's delay. The trial court may hear additional evidence to inform its determination.

---

[2] In equity to avoid forfeiture, Washington courts have crafted remedies specific to the circumstances of a particular case. For example, courts have also allowed conditional reinstatement of a real estate contract, *Falaschi v. Yowell*, 24 Wn. App. 506, 510, 601 P.2d 989 (1979), a right of prepayment in full, *Terry v. Born*, 24 Wn. App. 652, 656, 604 P.2d 504 (1979), and substitution of a reasonable time for completing payment, *Kilcullen*, 177 Wn. App. at 205-06.

2. Unjust enrichment and quantum meruit

Northwood also argues that if the modification provision is a condition precedent, we should remand for the trial court to reinstate its equitable claims for unjust enrichment and quantum meruit. We disagree.

"'A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.'" *Boyd v. Sunflower Props., LLC*, 197 Wn. App. 137, 149, 389 P.3d 626 (2016) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943)). Unjust enrichment and quantum meruit are used to fill in gaps in a contract related to an unforeseen event or in situations where there is no contract governing the parties' relationship. *Young v. Young*, 164 Wn.2d 477, 484-86, 191 P.3d 1258 (2008); *Hensel Phelps Constr. Co. v. King County*, 57 Wn. App. 170, 174, 787 P.2d 58 (1990). Neither remedy is available if the claim is covered by the terms of a contract. *Boyd*, 197 Wn. App. at 149; *Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 683, 828 P.2d 565 (1992).

Here, the parties have a detailed contract that explicitly provided for what would happen in the event the plat modification provision was not recorded by the agreed upon deadline. As discussed above, the relevant question is whether equity demands that the contractual plat modification provision not be strictly enforced in order to avoid an extreme forfeiture. We accordingly decline to reinstate the unjust enrichment and quantum meruit claims.

## II. ATTORNEY FEES

Northwood asks for attorney fees on appeal. In its reply brief, Lennar suggests that it would be entitled to attorney fees as the prevailing party, but does not explicitly request attorney fees on appeal. Under RAP 18.1(a), a party must request fees to be entitled to them on appeal.

Where a contract provides that attorney fees and costs shall be awarded to one of the parties, we shall award reasonable attorney fees and costs to the prevailing party. RCW 4.84.330; *Connell Oil Inc. v. Johnson*, 5 Wn. App. 2d 856, 865, 429 P.3d 1 (2018). Paragraph 10.19 of the parties' agreement entitles the prevailing party in any legal proceeding to attorney fees and costs. Nevertheless, because we remand to the trial court for further proceedings, neither party is yet a prevailing party. We decline to award either party attorney fees at this stage.

## CONCLUSION

We reverse the trial court's conclusion that the plat modification provision was a contractual promise and its grant of summary judgment to Northwood on this basis. We hold that the provision was instead a condition precedent. Because conditions precedent should not be strictly enforced if they effectuate a harsh forfeiture, we remand to the trial court to determine whether equitable relief is appropriate to prevent forfeiture and, if so, what form that relief should take.

No. 52000-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Cruser, J.